IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID HALL,

                              Petitioner,                          OPINION and ORDER

    v.

CHRIS BUESGEN,                                                      24-cv-739-jdp

                              Respondent.

---

Petitioner David Hall, proceeding without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hall challenges his state-court convictions for attempted first-degree intentional homicide, first-degree recklessly endangering safety, possession of a firearm by a felon, felony bail jumping, and attempting to elude an officer. *State v. Hall*, Winnebago County Case No. 2018CF207. Hall was charged with these offenses after he was accused of shooting at men following a disturbance outside an Appleton apartment complex and then fleeing from police in a car. Hall contends that trial counsel was ineffective in various ways and that the Wisconsin Court of Appeals misapplied the standard for reviewing his appellate counsel's no-merit report.

I will deny Hall's petition. Some of his claims are barred for procedural reasons, and otherwise the record does not show that Hall is entitled to habeas relief given the overwhelming evidence of his guilt.

## BACKGROUND

The following facts are taken from the petition and the state court records provided by Hall and the state.

Hall was charged with two counts of attempted first-degree intentional homicide, four counts of recklessly endangering safety, two counts of bail jumping, and one count each of possession of a firearm as a felon and attempting to flee/elude a traffic officer, all as a repeater. The charges concerned an incident in Appleton on March 15, 2018. Hall was accused of shooting at two men several times following a fight outside an apartment complex. A stray bullet entered two apartments, endangering the people inside. Hall and his brother then fled the scene in a car as a police officer followed them.

At trial, cellphone video footage taken by an apartment maintenance worker showed part of the fight and a man in a black hooded sweatshirt with the hood on his head. At trial, Hall's mother stated that she didn't know who the man in the sweatshirt was. But a police investigator testified that after the incident he showed Hall's mother the video and she stated that Hall was the person in the sweatshirt. Hall's sister testified that she saw Hall shoot in the direction of the two men but wasn't trying to hit them, only scare them. A recording of a jail call between Hall and her sister was played, in which Hall stated that he wished his sister would change her statement. At trial the two men who had been shot at did not identify the shooter. But a police investigator testified that they both had previously given statements in which they said that Hall was the shooter.

There was additional testimony about a police chase of a car fleeing the scene. A witness saw a man throw an object into the river along the path of the chase. The car was eventually pulled over and Hall was arrested. A black hooded sweatshirt was found in the car.

A dive team retrieved a gun from the river in the area where the witness had seen an object thrown in. A firearms expert from the state crime lab testified that a bullet and casings found at the scene of the incident matched the gun retrieved from the river.

2

The jury found Hall not guilty of attempted homicide of one of the men, but found Hall guilty of the remaining counts. The circuit court later dismissed one of the counts of first-degree recklessly endangering safety as a lesser-included offense of Hall's conviction for attempted first-degree intentional homicide.

Hall's appellate counsel filed a no-merit report seeking to withdraw as appellate counsel under Wis. Stat. § 809.32 and *Anders v. California*, 386 U.S. 738 (1967). Hall filed a response and counsel filed a supplemental report in response. The Wisconsin Court of Appeals concluded that the evidence was sufficient to support Hall's convictions and it addressed various arguments made by Hall in his no-merit response. *State v. Hall*, No. 2021AP1104-CRNM, 2023 WL 3487919 (Wis. Ct. App. May 17, 2023). The Wisconsin Supreme Court denied Hall's petition for review.

Hall then filed a habeas petition in this court. The government filed a brief in opposition; Hall did not file a reply.

ANALYSIS

All of the claims that Hall raises in his habeas petition concern alleged ineffective assistance of his trial counsel. He contends that trial counsel was ineffective by failing to (1) investigate Hall's alibi; (2) investigate or call two eyewitnesses whose description of the shooter didn't match him; (3) properly cross-examine a police officer with phone recordings of Hall's sister; (4) impeach the state firearms examiner; (5) object to the judge's repeated additional questioning of the prosecution's witnesses; and (6) object to dismissal of the only black person on the jury panel. In his brief-in-chief, he raises an additional claim that the

Wisconsin Court of Appeals failed to properly apply *Anders* to its review of appellate counsel's no-merit report.

Generally, to obtain federal habeas relief, Hall must show that his state court custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden to show that he is entitled to habeas relief. *See, e.g., Westray v. Brookhart*, 36 F.4th 737, 746 (7th Cir. 2022); *Quintana v. Chandler*, 723 F.3d 849, 854 (7th Cir. 2013).

## A. Procedural issues

The state contends that most of Hall's claims fail for procedural reasons.

### 1. Claim three

Hall's third claim is about counsel failing to properly cross-examine a police officer with the full phone recordings of a call between Hall and his sister after the state played excerpts from those recordings that Hall believes were taken out of context to incriminate him. The state contends that this claim is procedurally defaulted because the Court of Appeals ruled that Hall failed to develop the claim.

A claim is procedurally defaulted, and thus barred from federal review, if "the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)) (additional internal quotations omitted). To bar federal habeas review, the state procedural ground must be "'independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (internal quotations omitted). "A state

4

law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* (internal quotations omitted).

The Court of Appeals noted Hall's argument about the phone recordings and stated, "Hall develops no argument for how counsel could have effectively challenged the incriminating phone calls he made while in jail. Thus, we will not discuss the issue further." *Hall*, 2023 WL 3487919, at *2. This is an adequate and independent state-law ground for rejecting a claim, so Hall procedurally defaulted this claim. *See Kerr v. Thurmer*, 639 F.3d 315, 323 (7th Cir. 2011) (discussing Wisconsin waiver law), *vacated on other grounds*, *Thurmer v. Kerr*, 566 U.S. 901 (2012); *see also State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

There are two ways that a petitioner may overcome procedural default. The first is by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U.S. at 750. Whether cause exists generally turns on whether the factual or legal basis for the claim "was not reasonably available to [the petitioner]," or whether "some interference by officials" made it "impracticable" for the petitioner to comply with the state procedural rule. *See Moore v. Casperson*, 345 F.3d 474, 486 (7th Cir. 2003).

The second is when "failure to consider the claims will result in a fundamental miscarriage of justice." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016). This exception "applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (internal quotations omitted). To establish an actual innocence claim, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To qualify for this narrow exception, a petitioner must provide "new reliable evidence—whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Hall doesn't make a showing under either standard. He didn't file a reply brief responding to the state's procedural default argument, nor does anything in his petition or brief-in-chief suggest that he means to pursue either exception to procedural default. Even had he pursued these exceptions, the evidence that he discusses in his petition (and that I discuss below) is not the type of striking new evidence contemplated in *Schlup* that would be necessary to show that Hall was actually innocent of the offenses. Therefore Hall does not qualify for an exception to his procedural default, and he cannot obtain habeas relief on this claim.

### 2. Claims one and four

Hall contends that counsel was ineffective by failing to investigate his alibi (claim one) or impeach the state firearms examiner (claim four). The state contends that Hall procedurally defaulted these claims because he did not raise them in his response to appellate counsel's no-merit report. The problem with this contention is that the Court of Appeals for the Seventh Circuit has explicitly rejected the application of a procedural default defense based on a petitioner's failure to raise an argument in response to a no-merit report, for two reasons: (1) Wisconsin courts used to bar ineffective-assistance claims from being raised on direct appeal if those claims hadn't been previously raised in a postconviction motion; and (2) procedural default for failure to raise an issue in a pro se no-merit response would be inconsistent with defendants' Sixth Amendment right to counsel on direct appeal. *See Page v. Frank*, 343 F.3d 901, 908–09 (7th Cir. 2003).

The state points out that Wisconsin courts have corrected the first problem identified in *Page*, and now allow a defendant to raise an ineffective-assistance claim in his response to a

no-merit report, even if he didn't previously raise it in a postconviction motion. *See State v. Allen*, 2010 WI 89. But the Sixth Amendment issue remains. The state argues that the Sixth Amendment discussion in *Page* was dicta, but I have previously concluded that I would continue to follow *Page* until the Court of Appeals for the Seventh Circuit addresses this issue. *Redman v. Meisner*, No. 15-cv-353-jdp, 2018 WL 5832139, at *5 (W.D. Wis. Nov. 7, 2018); *see also Jackson v. Richardson*, 629 F. Supp. 3d 866, 873 (E.D. Wis. 2022). So I will continue to apply *Page* here. Because I conclude that Hall hasn't procedurally defaulted these claims, I will consider their merits below.

### 3. Claims five and six

Hall contends that counsel was ineffective by failing to object to the judge's repeated additional questioning of the prosecution's witnesses (claim five); and by failing to object to dismissal of the only black person on the jury panel (claim six). The state contends that these claims should be dismissed as abandoned: in his brief-in-chief, Hall states that he "is only briefing the first four issues in his petition due to the limited time to file his brief and his limited knowledge of the law." Dkt. 13, at 3.[1] He adds that he "would ask this court rule [on] issues 5 and six without briefing them." *Id.*

Hall hasn't overtly abandoned his claims: he specifically asks the court to rule on them. But by failing to develop these claims in any meaningful fashion, he comes nowhere close to meeting his burden of showing that he is entitled to habeas relief on either of these claims. So I will not consider these claims further.

---

[1] For documents submitted by the parties I will refer to the page numbering in the court's electronic filing system rather than the internal pagination of those documents.

## B.  Merits

That leaves Hall's first, second, and fourth habeas claims from his petition, as well as the new claim that he raised in his brief-in-chief.

To obtain habeas relief, Hall must show that the Wisconsin courts rejected his claims "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As relevant here, for the state court's application of federal law to be unreasonable, a petitioner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers,* 584 U.S. 122, 125 (2018). In this case, that means that I must review the decision of the Wisconsin Court of Appeals.

But when the state courts have not "squarely addressed the merits of a habeas claim," the claim must be reviewed under the "standard of 28 U.S.C. § 2243" which "dispose[s] of the matter as law and justice require." *Ramirez v. Tegels*, 963 F.3d 604, 612 (7th Cir. 2020) (internal quotations omitted). That review is de novo, meaning that I give no deference to the state courts. *Tabb v. Christianson*, 855 F.3d 757, 764–65 (7th Cir. 2017).

8

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel provided ineffective assistance, Hall must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. To prove deficient performance, Hall must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Hall must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to prevail on a *Strickland* claim when reviewing a state-court decision under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Because the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* The question is not whether counsel's actions were reasonable, but rather, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The Wisconsin Court of Appeals didn't address Hall's first and fourth claims, so I will consider those claims under the de novo standard. The court of appeals did address Hall's second claim, so I'll consider that claim under the deferential standard.

### 1. Claim one

Hall contends that trial counsel was ineffective by failing to investigate his alibi after Hall explained that he could prove through his phone's location and receipts from transactions that day that he wasn't at the scene. Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

unnecessary." 466 U.S. at 691. "An outright failure to investigate witnesses, however, is more likely to be a sign of deficient performance." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005).

But even under the de novo habeas review standard, that isn't enough to show prejudice to Hall. When a petitioner alleges ineffective assistance of counsel due to a supposed failure to investigate, petitioner must provide the court "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citations omitted); *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991) (defendants alleging failure to call a witness must make "specific, affirmative showing as to what the missing evidence or testimony would have been"). Hall hasn't submitted the alibi evidence that he claims places him elsewhere during the shooting or describe with any detail what it would show, and his bare assertion that the evidence would be helpful isn't enough to support an ineffective-assistance-of-counsel claim. Appellate counsel noted that this evidence at most showed that Hall was elsewhere earlier in the day, before the shooting took place, Dkt. 10-4, at 4, and Hall doesn't address this point.

Hall's failure to show prejudice is apparent particularly given the overwhelming evidence of guilt presented against him: his sister identified him as the shooter, his mother and other witnesses placed Hall at the scene in their initial statements to police (before recanting these statements at trial), police chased a car that Hall was in after the incident and arrested him, a witness saw a man throw an object into the river along the path of the chase, and a firearms expert concluded that a bullet and casings found at the scene of the incident matched

the gun retrieved from the river. So Hall fails to show that he is entitled to habeas relief on this claim.

### 2. Claim four

Hall contends that his trial counsel failed to properly impeach the state firearms examiner by cross-examining him further about the failure to administer a gunshot-residue test to Hall after he was arrested.

At trial, the firearms expert testified that he examined the Glock recovered from the river, and seven casings and a bullet recovered from the scene. He testified that all of the casings and the bullet had been fired by the Glock based on his analysis of those items compared to rounds that he test-fired using the Glock. Hall's counsel cross-examined the expert generally about the procedures he used and about how gunshot-residue tests are no longer administered because they are no longer considered reliable.

Hall contends that counsel should have pressed the expert on his gunshot-residue testimony because Hall was eager to take that test to prove he wasn't the shooter yet wasn't allowed to take that test. He states that "a negative test would of ruled him out as the shooter, as the examiner never testified that the test gave false negatives." Dkt. 1, at 7. Hall also says that he has learned that the state had not yet fully stopped performing those tests at the time of the shooting here.

Applying a de novo review standard, I conclude that Hall fails to show that counsel's lack of further cross-examination about the lack of a gunshot-residue test prejudiced him. Contrary to Hall's contention that the expert "never testified that the test gave false negatives," the expert explicitly stated on cross-examination that "[i]t's an imperfect test. . . . So the issue was that if you fire a gun, there's no guarantee you are going to test positive. But also, if you

11

don't fire a gun, you could also test positive. So it produces what's called a false positive and a false negative, and that's not scientifically sound." Dkt. 12, at 30–31. Hall doesn't explain how counsel should have countered that answer or how a jury could have come to a different verdict had counsel approached the issue differently. There's no plausible way that a more effective cross-examination on this point would have produced any substantial exculpatory evidence, particularly given that Hall was identified as the shooter by his sister. So Hall fails to show that he is entitled to habeas relief on this claim.[2]

### 3. Claim two

Hall contends that counsel was ineffective by failing to investigate or call two neighbors who witnessed the events from an upstairs window of their apartment. There's no indication that they knew Hall personally. They told police that the shooter was five feet, ten or eleven inches tall and was a black person with a lighter skin color. *See* Dkt. 13-1, at 2–3 (witnesses' statements from police report). Hall states that he is five feet, seven inches tall and has darker skin. The court of appeals concluded "[t]here is also no indication that the neighbor witnesses . . . would have made a difference at trial." *Hall*, 2023 WL 3487919, at *2. It then discussed the various evidence incriminating Hall, and concluded that "[c]ollectively, this evidence eviscerates any alibi defense Hall may be attempting to raise now." *Id.*

Hall states that the court of appeals didn't cite *Strickland* or explicitly state its standards, which I take to be an argument both that the court of appeals' decision was contrary to controlling law and that I must review the issue de novo. But the court of appeals wasn't

---

[2] The reliability of firearm matching has been sharply criticized. But Hall doesn't argue that the firearm-matching evidence is unreliable. Even if he had, there was compelling circumstantial evidence that the gun recovered from the river was the one used in the shooting.

required to cite *Strickland*; it is enough that its rationale was consistent with *Strickland*. *Early v. Packer*, 537 U.S. 3, 8 (2002) ("[Section 2254(d) does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." (emphasis in original)). The court's statement that the neighbor witnesses wouldn't have made a difference in the outcome is consistent with *Strickland*, so this argument fails.

Applying the deferential "unreasonable application" test, I conclude that fairminded jurists could agree with the court of appeals' decision that there was no prejudice to Hall, for a similar reason that I rejected his claim about phone-location and receipt evidence: the evidence inculpating him was overwhelming. It is not reasonably probable that accounts from two people who didn't know Hall and viewed the shooting from a distance would overcome the evidence of Hall's guilt, led by his own sister's identification of him as the shooter. Therefore, Hall is not entitled to habeas relief on this claim.

### 4. New claim

In his brief-in-chief, filed after the government answered the petition, Hall appears to add a new claim, stating that the Wisconsin Court of Appeals unreasonably applied *Anders* by failing to state that Hall's claims were frivolous. Rather, it stated that "there are no issues with arguable merit for appeal." *Hall*, 2023 WL 3487919, at *1. The government challenges this claim on procedural and substantive grounds. I will ignore the procedural issues and skip to the substance. The Court of Appeals for the Seventh Circuit has previously considered this precise argument and rejected it:

> Nor is the Wisconsin Court of Appeals limited to the magic word "frivolous," as [petitioner] submits. True, a court cannot say a defendant's claim is "unlikely to prevail on appeal." [*Smith v. Robbins*, 528 U.S. 259, 279 (2000)]. But *Robbins* also tells courts

> it is permissible to determine that a claim is "lacking in arguable issues, which is to say, frivolous." That is what the state appellate concluded here: "there is no issue of arguable merit that could be pursued on appeal."

*Carter v. Tegels*, 135 F.4th 534, 542 (7th Cir.) (internal citation omitted), *reh'g denied*, No. 23-1266, 2025 WL 1474827 (7th Cir. May 22, 2025), and *cert. denied sub nom. Carter v. Mlodzik*, 146 S. Ct. 216 (2025).

Because there was nothing improper about the Wisconsin Court of Appeals stating that Hall's claims lacked arguable merit, he is not entitled to habeas relief on this claim.

## C. Motion for appointment of counsel and hearing

In his brief-in-chief, Hall moves for appointment of counsel, stating that he relied on the help of other prisoners to write his brief and that counsel could help him develop the record. He also seeks an evidentiary hearing.

I will deny Hall's motion for appointment of counsel because there is no indication that Hall would have a reasonable chance of prevailing on his petition if he had counsel. My examination of his ineffective-assistance-of-counsel claims shows that he was not prejudiced by the asserted errors of trial counsel. And Hall doesn't show that the lack of counsel prevented him from presenting the claims that he chose not to brief, submitting evidence supporting his petition, or from filing a reply brief. I granted Hall multiple extensions of his deadlines to file his briefs, Dkt. 7; Dkt. 12; Dkt. 19, and he could have sought additional extensions but did not.

As for his request for an evidentiary hearing, no hearing is warranted because as my analysis shows, "the record . . . precludes habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

14

**D. Certificate of appealability**

The remaining question is whether to grant Hall a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because I find that no reasonable jurist would debate the outcome here, I will not issue Hall a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1.  Petitioner David Hall's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED.

2.  Petitioner is DENIED a certificate of appealability.

3.  The clerk of court is directed to enter judgment and close the case.

Entered May 12, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

15